United States District Court
For the Eastern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR LUCIO, | No. C 08-0631 WHA (PR) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S 56(D) MOTION** |
| v. | |
| JAMES SMITH, MANUEL GARCIA, MARIANA REYES, AND JOHN DOES 1-10 | |
| Defendants. | |
| / | (Docket Nos. 41 and 44) |

**INTRODUCTION**

This is a civil rights action filed under 42 U.S.C. 1983 by a California prisoner proceeding *pro se*. Plaintiff claims that various officials at Kern Valley State Prison ("KVSP") were deliberately indifferent to his serious medical needs while he was incarcerated at that facility. Defendants James Smith, Manuel Garcia, and Mariana Reyes (collectively, "Defendants") have moved for summary judgment. Plaintiff has filed a cross-motion for summary judgment. For the reasons stated herein, defendants' motion for summary judgment is **GRANTED** as to defendants Manuel Garcia and Mariana Reyes and **DENIED** as to defendant James Smith. Plaintiff's cross-motion for summary judgment is **DENIED**. Plaintiff's 56(d)

motion is **GRANTED IN PART AND DENIED IN PART.**[1]

## STATEMENT

The following facts are based on the plaintiff's deposition testimony, the defendants' declarations, the dental records and administrative records provided by the parties, and the declaration of Elena Pimental, plaintiff's sister (filed as Docket No. 38)[2] The facts are undisputed unless otherwise indicated.[3]

Defendant James Smith was KVSP Chief Dental Officer ("CDO") from April 15, 2005 to December 31, 2009. Defendant Manuel Garcia was the dentist assigned to the A and D yards at KVSP in 2005, and defendant Mariana Reyes served as his dental assistant. Assistant Reyes served in a support role to Dr. Garcia. She was responsible for initial patient intake and recording dental concerns and dental history. Initially, she also scheduled appointments in response to Form 7362 medical requests and at Dr. Garcia's request. In or around April or May 2006, KVSP transferred scheduling responsibilities to office technicians. Assistant Reyes was not responsible for determining proper patient treatment, nor did she have the training to make such determinations.

### A. KVSP Dental Facilities

Plaintiff was transferred to KVSP on January 31, 2006. He was among the first group of

---

[1] Plaintiff has filed a 56(f) motion but the court assumes that plaintiff is seeking a continuance pursuant to Federal Rule of Civil Procedure 56(d). Former Rule 56(f) was amended in 2010 and is now set forth in Rule 56(d).

[2] The court considers in opposition to defendants' motion any statements to which plaintiff attests, to the extent that such statements pertain to factual matter based on plaintiff's personal knowledge and are set forth under penalty of perjury. *See*, *e.g.*, *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that where the plaintiff is *pro se*, the court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct"). In this case, plaintiff's deposition testimony was set forth under penalty of perjury, but plaintiff's complaint and declaration are unsigned which precludes the court from considering the statements therein as evidence. *See* 28 U.S.C. 1746. The court therefore only considers those statements in plaintiff's deposition testimony that are based on his personal knowledge and admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2) and (4).

[3] Both parties have submitted summary judgment motions. Since the court views the facts in the light most favorable to the non-movant, both parties' versions of disputed facts are set forth in this section.

2

1  inmates to be housed at KVSP, D Yard.  At that time, KVSP had three dentists and three dental
2  assistants to address the dental needs of five prison yards, which collectively housed
3  approximately 3,000 to 4,000 inmates.  Because of the limited number of dentists and dental
4  assistants, each yard had dental staff available no more than two days a week.  Due to the
5  staffing levels, the requirement of initial examinations for the newly transferred inmates, and
6  the ongoing dental needs of inmates, the average wait time during 2006 for dental appointments
7  was two months.

8       At the time of plaintiff's arrival, the D Yard dental clinic had no dental equipment due
9  to an equipment distribution delay throughout all of KVSP.  Due to this delay, it was months
10 before any of the yards at KVSP had a fully functional dental clinic.  Since the dental clinic had
11 no equipment, Dr, Garcia could only perform visual examinations.

12      KVSP administration repeatedly informed the dental staff that the necessary equipment
13 would soon be available, leading defendants to believe that the dental clinics would be fully
14 functional within days.  Initially, the dental staff had special permission to send inmates to
15 North Kern State Prison, located one mile away, for dental work.  At some unidentified point,
16 the North Kern State Prison chief medical officer refused to allow KVSP inmates to receive
17 treatment at his facility due to a difference in security levels between the facilities.

18 **B.**     **Plaintiff's Dental Treatment**

19      The parties disagree as to when defendants first learned about plaintiff's dental
20 problems.

21      Plaintiff states that when he arrived at KVSP on January 31, 2006, tooth #3 was black,
22 clearly showed an abscess and was causing facial swelling.  He also states that tooth #5 was
23 also bothering him at the time.  Plaintiff states that, upon his arrival, he informed the receiving
24 and registering nurse that he had two molars that required medical attention, and the nurse
25 responded that she would put him on the dentist line.  There is no evidence that the nurse
26 informed defendants of plaintiff's dental needs.  Plaintiff further states that he filled out two
27 medical request slips seeking treatment for his dental needs between January 31, 2006, and
28 February 10, 2006.  There is no record of these request slips in his medical file, and there is no

3

1  evidence that these request slips were delivered to defendants.

2        On February 15, 2006, plaintiff submitted a Form 7362 medical request slip seeking
3  dental treatment. There was no dentist on Yard D that day, but he was provided a same-day
4  appointment with Dr. Nahaved, the medical doctor on duty. Dr. Nahaved conducted a visual
5  examination of plaintiff's teeth since the x-ray machine still had not been delivered. Dr.
6  Nahaved's notes stated that plaintiff had dental decay and a broken tooth. Under the section
7  titled "Plan," Dr. Nahaved wrote "broken teeth —> dentist" in the line titled "Medications."
8  There are no notations under the section titled "Referral" or "Interval to next visit." Dr.
9  Nahaved prescribed plaintiff a two-week supply of ultram and motrim to treat his pain and told
10 plaintiff that he would be seen by a dentist within five or ten days. There is no indication in the
11 record that Dr. Nahaved informed defendants about plaintiff's dental problems.

12       Assistant Reyes learned of plaintiff's dental needs on March 1, 2006, when a medical
13 technical assistant ("MTA") conveyed to her plaintiff's request for dental treatment. There is
14 no evidence in the record that assistant Reyes knew the specifics of plaintiff's dental needs, or
15 that she informed either defendants Smith or Garcia about plaintiff's dental needs. Assistant
16 Reyes instructed the MTA that plaintiff should submit a Form 7362 medical request in order to
17 schedule a dental appointment.

18       Instead of submitting the requested Form 7362, Plaintiff submitted an Form 602 inmate
19 grievance that same day and again on March 8, 2006. Form 602 inmate grievances are initially
20 processed by the appeals office before being referred to the dental staff. The appeals office
21 screened out these two Form 602 inmate grievances and never forwarded it to the dental staff.
22 The appeals office did not respond to these grievances until ten months later, in late December
23 2006.

24       Regardless, plaintiff received a dental appointment on March 14, 2006, two weeks after
25 his request was conveyed to assistant Reyes. Dr. Garcia states that this was the first time he
26 learned of plaintiff's dental needs. Dr. Garcia could only conduct a visual examination since
27 the D Yard dental clinic still was not functional. There was no functioning x-ray machine and
28 no dental instruments. Without taking x-rays, Dr. Garcia could not be certain if tooth #3

4

required an extraction or could be restored. The visual examination did not indicate any other patently visible issues with plaintiff's teeth. He prescribed plaintiff ibuprofen and amoxicillin to fight pain and infection and instructed plaintiff to return for a follow-up appointment which might include a potential extraction, if necessary.

At that time, administration officials were advising dental staff almost daily that dental equipment was on its way. Based on the officials' representations, Dr. Garcia believed that the clinic would be fully functional within days and that plaintiff's dental care could be handled more promptly in-house than by referring plaintiff to an outside dental provider. Assistant Reyes scheduled plaintiff for a follow-up appointment on May 30, 2006, which was the next available appointment.

Plaintiff did not want to wait two months for his follow-up appointment, and attempted to have tooth #3 treated sooner. Plaintiff states that, between March 14, 2006 and May 30, 2006, he made two "formal requests" for treatment, submitted an "inmate request" to CDO Smith through the mail, and had his sister call CDO Smith twice to request dental treatment for plaintiff. Plaintiff does not specify whether these requests were in the form of letters, Form 7362 medical requests, or Form 602 inmate grievances. In any event, there is no record of these requests in plaintiff's medical files, nor is there any indication in the record that CDO Smith received plaintiff's "inmate request." CDO Smith also does not recall whether he spoke to plaintiff's sister.

According to CDO Smith, even if medical requests are addressed to him, he does not see them. Instead, they are handled by a triaging nurse, who refers them to mental or dental staff as appropriate. CDO Smith further stated that if he had spoken with plaintiff's sister, he would not have discussed plaintiff's dental care, but would only have assured her that he would look into the situation. CDO Smith stated that had he reviewed plaintiff's records at that time, he would have concluded that plaintiff was receiving "regular and proper" care, with an initial appointment in March 2006 and a follow-up appointment scheduled for May 2006.

In any event, plaintiff did not receive dental treatment prior to his follow-up appointment, although Dr. Garcia did prescribed pain medication for him on May 24, 2006. On

May 30, 2006, plaintiff was seen by Dr. Garcia for his follow-up appointment. At that time, the dental clinic had some dental instruments but the x-ray machine was still not functioning. Dr. Garcia believed that plaintiff's condition was stable for two reasons. First, according to Dr. Garcia's notes, plaintiff stated that the antibiotics previously prescribed had helped. Plaintiff disputes this account, stating that he could not have made such a statement since the antibiotics had not helped with the infection or his pain level. Second, a fistula had developed near tooth #3, which reduced the infection risk and should have alleviated any abscess-related discomfort. At this appointment, plaintiff also informed Dr. Garcia that tooth #5 was bothering him and that he wanted it restored so that it would not have to be extracted.

Dr. Garcia did not feel it would be appropriate to proceed with an extraction or restoration without a functioning x-ray machine, so he promptly referred plaintiff to an outside oral surgeon for x-rays and a possible extraction of tooth #3. The specialist referral was approved the following day. Dr. Garcia was not responsible for scheduling plaintiff's appointment with the specialist. The record does not indicate whether CDO Smith and assistant Reyes could schedule plaintiff's appointment with the specialist. In the meantime, Dr. Garcia prescribed plaintiff antibiotics and pain medication.

On July 6, 2006, five weeks later, plaintiff was treated by Dr. Nicholson, an outside oral surgeon. At this appointment, Dr. Nicholson took x-rays, extracted tooth #3, and removed some tissue from plaintiff's mouth to test for malignancies. Plaintiff claims that Dr. Nicholson also informed him that tooth #5 would require extraction if it was not restored. Dr. Nicholson's notes recommend restoration of tooth #4; plaintiff is unclear whether Dr. Nicholson intended to refer to tooth #4 or tooth #5.

In August 2006, plaintiff submitted a Form 7362 medical request, requesting dental treatment for tooth #5. There is no record of such a request in the plaintiff's medical files, nor is there any record that defendants received or knew of such a request.

On or about September 14, 2006, plaintiff learned that the prison dental clinic was equipped and capable of performing restorations. On September 14, 2006, plaintiff filed a Form 602 inmate grievance requesting immediate restoration of tooth #5. By this point, tooth #5 was

6

causing plaintiff constant pain and had turned black. On November 1, 2006, assistant Reyes interviewed him for the second level response to this grievance. Assistant Reyes informed plaintiff that his medical file did not contain any requests for dental work for tooth #5, and that his dental chart did not indicate that tooth #5 required dental work. She provided him with a Form 7362 medical request to request dental treatment of tooth #5, which plaintiff completed and submitted that same day.

In response, plaintiff was scheduled for a dentist appointment on December 21, 2006. Dr. Garcia's examination on that day indicated tooth #3 was healing well, and that teeth #4 and #5 were showing signs of decay and needed restoration. Plaintiff asked to have tooth #5 restored that day, but Dr. Garcia did not do so. CDO Smith claims that time constraints prevented Dr. Garcia from restoring plaintiff's tooth that day. Instead, a follow-up appointment was scheduled for February 21, 2007, for restoration of teeth #4 and #5. On that day, Dr. Garcia performed a teeth cleaning, took x-rays and restored teeth #4 and #5 by placing fillings. After this visit, defendants Garcia and Reyes had no further contact with plaintiff, and Dr. Hashem took over plaintiff's dental care. Eventually tooth #5 was extracted and a crown was put on tooth #4.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

1  reasonable trier of fact could find other than for the moving party. On an issue for which the
2  nonmoving party will have the burden of proof at trial, the moving party need only point out
3  "that there is an absence of evidence to support the nonmoving party's case." *Id.*

4  Once the moving party meets its initial burden, the nonmoving party must go beyond the
5  pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to
6  specific parts of materials in the record" or "showing that the materials cited do not establish
7  the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party
8  fails to make this showing, "the moving party is entitled to judgment as a matter of law."
9  *Celotex*, 477 U.S. at 323.

10  At summary judgment, the judge must view the evidence in the light most favorable to
11  the nonmoving party: if evidence produced by the moving party conflicts with evidence
12  produced by the nonmoving party, the judge must assume the truth of the evidence set forth by
13  the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th
14  Cir. 1999).

15  When the parties file cross-motions for summary judgment, the district court must
16  consider all of the evidence submitted in support of both motions to evaluate whether a genuine
17  issue of material fact exists precluding summary judgment for either party. *The Fair Housing*
18  *Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir.
19  2001).

20  **B.     Deliberate Indifference to Medical Need**

21  Deliberate indifference to a prisoner's serious medical needs violates the Eighth
22  Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth
23  Amendment only when two requirements are met: (1) the deprivation alleged is, objectively,
24  sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's
25  health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Accordingly, evaluating a
26  claim of deliberate indifference necessitates examining the seriousness of the prisoner's need
27  and the nature of the defendant's response. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th
28  Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136

8

(9th Cir. 1997) (en banc).

### 1. "SERIOUS" MEDICAL NEED

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059. The existence of chronic and substantial pain is an example of an indication that a prisoner has a serious need for medical treatment. *See id.* at 1059-60.

Plaintiff complained that, as a result of his dental issues, he suffered tooth pain, facial swelling and weight loss. He also had difficulty sleeping and eating. Plaintiff's dental pain constituted a serious medical need, which the defendants do not dispute. *See, e.g.*, *Hunt v. Dental Dep't, et al.*, 865 F.2d 198, 199 (9th Cir.1989) (serious medical need where loss of dentures caused gum disease and possibly weight loss).

### 2. DELIBERATE INDIFFERENCE

Deliberate indifference may be manifested in one of two ways: "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted). A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.*

Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Estelle*, 429 U.S. at 106. Nor is an Eighth Amendment violation established by a mere difference of opinion as to which medically acceptable course of treatment should be followed. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Where, as here, there was some response but the complaint is about the timeliness of that response to the medical condition, the temporal component is best considered as part of the subjective prong rather than the objective prong of the deliberate indifference test. *See, e.g.,*

9

*Plemmons v. Roberts*, 439 F.3d 818, 823-24 (8th Cir. 2006) (response to complaints of heart attack symptoms). The need for speed goes to whether the official took the "reasonable measures" mentioned in *Farmer*, 511 U.S. at 837. "[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an eighth amendment violation." *Hunt*, 865 F.2d at 200 (citation omitted).

### C. Defendants' Motion for Summary Judgment

Plaintiff argues that the defendants were deliberately indifferent to his serious medical need by delaying treatment for teeth #3 and #5, causing him pain and resulting in both teeth being extracted rather than restored. In considering the defendants' motion for summary judgment, the court views the facts in the light most favorable to plaintiff, and, when the parties' evidence conflicts, assumes the truth of the evidence set forth by the plaintiff. *Leslie*, 198 F.3d at 1158.

Based on the record before the court, and viewing the facts in the light most favorable to plaintiff, the earliest any defendant learned of plaintiff's dental needs was March 1, 2006, when an MTA informed assistant Reyes that plaintiff wanted emergency dental work. Although plaintiff states that he made multiple requests for dental treatment between January 31, 2006 and March 1, 2006 (verbally to the registering and receiving nurse and to Dr. Nahaved, and by submitting two medical requests slips), plaintiff has no personal knowledge of whether his requests were conveyed to defendants, and there is no indication in the record that defendants were informed of plaintiff's dental needs prior to March 1, 2006. A reasonable trier of fact could not find, based on this scant evidence, that defendants knew of the attempts to obtain dental treatment prior to March 1, 2006. *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989) (finding that an affidavit made on information and belief, but not personal knowledge, was insufficient to defeat a motion for summary judgment).

#### 1. Defendant Manuel Garcia

Plaintiff claims that Dr. Garcia was deliberately indifferent to plaintiff's serious dental needs because he failed to treat teeth #3 and #5 sooner and save them from extraction. Viewing the facts in the light most favorable to plaintiff, Dr. Garcia first learned of plaintiff's medical

10

condition on March 15, 2006, and continued to treat him through February 2007. Dr. Garcia provided the dental treatment he believed to be appropriate given the circumstances. At plaintiff's initial appointment, Dr. Garcia lacked an x-ray to confirm whether tooth #3 should be restored or extracted. Dr. Garcia therefore decided that the best course of treatment was to prescribe medication to address the infection and pain, and to have plaintiff return for a follow-up treatment on May 30, 2006. Since prison administrators repeatedly assured him that the dental clinic would soon be fully equipped, Dr. Garcia believed that plaintiff's wait time for a follow-up appointment at the prison dental office would be shorter than the wait time for an appointment with an outside provider.

Similarly, at plaintiff's May 30, 2006, follow-up appointment, Dr. Garcia again declined to proceed with an extraction because the clinic still lacked an x-ray machine. In addition, Dr. Garcia decided that an immediate extraction was not necessary since the fistula which had developed near tooth #3 would reduce plaintiff's pain and infection risk. Dr. Garcia instead promptly referred plaintiff to an outside oral surgeon for x-rays and a possible extraction. He continued plaintiff on pain medication and antibiotics to treat pain and possible infection.

There is no indication in the record that Dr. Garcia was informed of any of plaintiff's subsequent requests for medical treatment (August 2006 Form 7362 medical request and September 2006 Form 602 inmate grievance). The next time Dr. Garcia saw plaintiff was at his December 21, 2006, dental appointment. At this appointment, Dr. Garcia noticed tooth decay in teeth #4 and #5 and determined that the teeth required restoration in the near future. Dr. Garcia ordered a follow-up appointment for the restoration of teeth #4 and #5. On February 21, 2007, plaintiff returned to the clinic whereupon Dr. Garcia took x-rays and restored teeth #4 and #5. Dr. Garcia chose to restore tooth #5 that day, instead of extract it, in the hopes that tooth #5 could be healed through restoration. After this appointment, Dr. Garcia did not see plaintiff again and was no longer responsible for his dental treatment.

The record indicates that Dr. Garcia did not deliberately deny or delay treatment but, instead, provided treatment different than what plaintiff requested. Dr. Garcia provided the treatment that he believed to be appropriate given the circumstances. In his professional

11

opinion, he could not restore or extract a tooth without x-rays of the affected area. Relying on prison officials' assurances that dental equipment would be arriving soon, Dr. Garcia also believed that he could treat plaintiff more quickly at the prison than by referring him to an outside provider. After it became clear that he could not rely on the prison officials' assurances, he immediately referred plaintiff to an outside dental provider. When Dr. Garcia noticed decay in teeth #4 and #5, he decided that they only required restoration in the near future and not that day. Plaintiff has provided no competent evidence to show that Dr. Garcia's approach was medically unacceptable. The difference of opinion between plaintiff and Dr. Garcia as to the appropriate dental treatment would not support a finding of deliberate indifference. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *see also Sanchez*, 891 F.2d at 242.

Moreover, Dr. Garcia was not deliberately indifferent by allowing plaintiff to wait for an average of two months between appointments. The Eighth Amendment analysis in a delayed response case requires a plaintiff to raise a triable issue of fact that a delay occurred to an inmate with a problem so severe that a delay would cause significant harm and that the defendant knew this to be the case. *Cf. Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002). Plaintiff has not presented evidence that Dr. Garcia knew that a two-month wait for treatment of either tooth #3 or #5 would cause him significant harm.

### 2. Defendant Mariana Reyes

Plaintiff argues that assistant Reyes was deliberately indifferent to his medical needs when she failed to schedule him for dental appointments in a timely manner. He also argues that her "inadequate" scheduling system caused the referral from Dr. Nicholson to be misfiled.

Viewing the facts in the light most favorable to plaintiff, assistant Reyes first learned of plaintiff's dental needs on March 1, 2006, when informed by an MTA. Plaintiff was seen within two weeks of assistant Reyes initially learning of his dental needs. Assistant Reyes then scheduled plaintiff for the next available follow-up appointment, May 30, 2006. Assistant Reyes did not handle scheduling after May 2006. Additionally, there is no indication in the record that the mis-filing of Dr. Nicholson's notes and referral was caused by assistant Reyes.

12

Plaintiff has failed to show a triable issue of fact that assistant Reyes was deliberately indifferent to plaintiff's dental needs since she neither delayed or denied treatment to plaintiff. *See Hutchinson*, 838 F.2d at 394.

### 3. Defendant James Smith

Plaintiff argues that CDO Smith was deliberately indifferent to his dental needs by failing to put in place an adequate dental care system which ultimately led to delayed dental treatment, related pain, and the eventual extraction of teeth #3 and #5. Plaintiff also argues that CDO Smith ignored his direct request for immediate dental treatment on March 24, 2006, and similar requests from plaintiff's sister in April 2006.

A supervisory official can be held liable under Section 1983 if he knows of and disregards an excessive risk to inmate health or safety: "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health . . ." *Farmer*, 511 U.S. at 837, 844 (internal quotations and citations omitted).

There was one dentist and one dental assistant available for each 1,000 inmates, which CDO Smith acknowledged was inadequate staffing. Despite this inadequate staffing, KVSP dental staff were expected to administer initial dental examinations to the nearly 4,000 newly transferred inmates, as well as handling routine dental care and addressing emergency dental needs. It was also months before the KVSP dental clinics were fully equipped. Since the dental clinics lacked equipment, dentists could only conduct visual examinations.

CDO Smith claims that he had no ability to hire additional staff or to hasten the delivery of dental equipment. He does acknowledge, however, that he had the ability to put in place overall procedures regarding dental care. For example, sometime after plaintiff's arrival, CDO Smith staffed a dental assistant in receiving and release to so that incoming inmates' serious dental issues could be quickly discovered and remedied. Despite knowing of the inadequate dental facilities and staffing at KVSP, CDO Smith did not put into place procedures that expeditiously addressed emergency dental needs, such as reducing wait times between appointments or facilitating referrals to outside specialists. Such conditions constituted a

13

substantial risk of serious damage to inmates' dental health. *See*, *e.g.*, *Hunt v. Dental Dep't.*, 865 F.2d 198, 200 (9th Cir. 1988) (Eighth Amendment requires that prisoners be provided with a system of ready access to dental care).

Moreover, viewing the facts in the light most favorable to plaintiff, CDO Smith was aware of plaintiff's dental needs as early as March 24, 2006, when plaintiff submitted an inmate request addressed directly to CDO Smith. *See, e.g., Jett v. Penner, et. al.*, 439 F.3d 1091, 1097 (presumption required that doctor received letter sent to him via institutional mail in a timely fashion when viewing facts in light most favorable to plaintiff). In April 2006, plaintiff's sister contacted CDO Smith twice regarding plaintiff's lack of dental treatment. CDO Smith claims that had he spoken to plaintiff's sister, he would have reviewed plaintiff's file and presumed that plaintiff was receiving adequate treatment with an initial appointment in March, and a follow-up appointment scheduled for May. CDO Smith was aware, however, that the dental clinics still lacked dental equipment and that it was therefore a possibility that only a visual examination could be conducted in May. There is a triable issue of fact as to whether CDO Smith responded reasonably to plaintiff's dental needs given the condition of the KVSP dental facilities, and as to whether CDO Smith's policies, or lack thereof, exposed plaintiff's dental health to substantial risk. *See*, *e.g.*, *Redman v. County of San Diego*, 924 F.2d 1435, 1439 (9th Cir. 1991), *abrogated on other grounds by Farmer*, 511 U.S. at 834 (finding that a reasonable jury could find that because the sheriff knew or reasonably should have known of facility overcrowding, sheriff acquiesced in a deficient policy that was a moving force behind the constitutional violation).

### 4. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court must consider the following two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) "whether the right was clearly established. . . .

14

'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Pearson v. Callahan*, 555 U.S. 223, 235 (2009) (overruling the sequence of the *Saucier* two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*).

Defendants Garcia and Smith did not exhibit deliberate indifference to plaintiff's serious medical needs. The court therefore need not consider whether the right was clearly established. Accordingly, defendants Garcia and Smith are entitled to judgment as a matter of law on the qualified immunity defense.

CDO Smith is not entitled to qualified immunity. An inmate has a constitutional right not to have his medical providers employed by the State treat his condition with "deliberate indifference." *McGuckin*, 974 F.2d at 1059. CDO Smith's failure to put into place procedures that would compensate for the inadequate staffing and unequipped dental clinics raise a triable issue of fact as to whether a reasonable medical administrator in CDO Smith's position would have known he was violating a clearly established right. *Id.* at 1060.

### 5. Negligence claim

Having determined that no federal claim was stated with respect to the defendants Garcia and Reyes, the court declines to exercise supplemental jurisdiction over the remaining state law claim of negligence and dismisses this claim without prejudice to plaintiff pursuing it in state court against Garcia and Reyes.

### D. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff has filed a cross-motion for summary judgment, arguing that the records show no factual dispute as to whether defendants were deliberately indifferent to his serious medical needs. Plaintiff's cross-motion for summary judgment is **DENIED** as to Dr. Garcia and assistant Reyes. Dr. Garcia and assistant Reyes did not exhibit deliberate indifference to plaintiff's

15

serious medical needs. *See infra* Section C.1 and C.2. Plaintiff's cross-motion for summary judgment is also **DENIED** as to CDO Smith. There is a triable issue of fact as to whether CDO Smith was deliberately indifferent to plaintiff's serious medical need. *See infra* Section C.3 and C.4.

### E.     Plaintiff's Rule 56(d) Motion

Plaintiff also requests that the court continue its ruling on the summary judgment motions pursuant to Federal Rule of Civil Procedure 56(d) so that he may conduct discovery to determine (1) each defendant's job description and duties, and (2) the identities of the John Doe defendants who were responsible for (a) opening up KVSP, (b) processing prisoners' requests for medical care, and (c) processing prisoners' complaints. Plaintiff's motion (Docket No. 44) is **GRANTED IN PART** and **DENIED IN PART.**

Rule 56(d) provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery. Fed. R. Civ. P. 56(d). Defendants Garcia and Smith explain their job description and duties in their declarations. These duties were taken into account in the above analysis, and would not preclude summary judgment in favor of these two defendants. *See, e.g., Noriega-Perez v. United States*, 179 F.3d 1166, 1170 n.1 (9th Cir. 1999) (ALJ's denial of discovery motion proper where party failed to show requested documents were relevant and could have affected the outcome of the summary judgment motion). Summary judgment was denied with respect to CDO Smith, so discovery regarding CDO Smith is not necessary. Moreover, this case has been pending since April 2008. Plaintiff has had ample time to conduct discovery regarding CDO Smith. Plaintiff's 56(d) motion is therefore **DENIED** with respect to the named defendants Smith, Garcia and Reyes.

In the interests of justice, the court will allow discovery regarding the identities of the Doe defendants. Plaintiff has sixty (60) days to conduct discovery. On January 3, 2012, plaintiff must provide the true names for the Doe defendants. If the true names of the Doe defendants are not provided by that deadline, the Doe defendants will be dismissed without

16

prejudice. No extensions of this deadline will be granted.

## CONCLUSION

Defendants' motion for summary judgment (Docket No. 41) is **GRANTED** as to defendants Garcia and Reyes and **DENIED** as to defendant Smith. Plaintiff's cross-motion for summary judgment (Docket No. 44) is **DENIED.** Plaintiff's 56(d) motion to continue ruling on the summary judgment motions is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff must provide the true names of the Doe defendants by January 3, 2012.

**IT IS SO ORDERED.**

Dated: November   9  , 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\E.D. CAL\LUCIO 08-631\Lucio-08-631-sj2.wpd

17